**Fannie A. NICHOLS, Appellant,**

v.

**Robert FINCH, Secretary of the Department of Health, Education and Welfare, United States of America, Appellee.**

**No. 13526.**

United States Court of Appeals, Fourth Circuit.

Feb. 5, 1970.

James H. Johnson, III, and Richard M. Hutson, II, Durham, N. C., for appellant.

William L. Osteen, U. S. Atty. (Richard M. Dailey, Jr., Asst. U. S. Atty., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and BOREMAN and CRAVEN, Circuit Judges.

HAYNSWORTH, Chief Judge.

In this action for Social Security benefits, we disagree with the District Judge in his conclusion that the record contains substantial evidentiary support for the Secretary's conclusion that the claimant is not disabled within the meaning of the statute.

The claimant had worked for twenty-one years as a machine operator in a tobacco factory. She was retired as disabled only after a succession of attacks of thrombophlebitis in each of her legs and an acute attack of pulmonary embolization.

The attending physicians and the claimant's gynecologist, who had observed her condition, were unanimously of the opinion that the claimaint was completely disabled, and that she could neither stand nor sit for any extended period of time without suffering great pain. To obtain substantial comfort, she wore elastic hosiery and was required to keep her legs elevated a substantial portion of the time.

Other doctors who examined her at the request of the Secretary found no acute thrombophlebitis at the time of the examination and no objective clinical evidence of substantial damage to the veinal system in her legs, though the

tests administered did not preclude such injury in the deeper veins. Such swelling as they observed was reported to be moderate. It was these reports which led the Secretary to conclude that there was no disability and the District Judge to find a basis in the record for the Secretary's conclusion.

None of these doctors, however, undertook to express an opinion that the claimaint could in fact stand or sit for any extended period of time without suffering acute pain. The claimant, who gave the impression of sincerity, testified as to the constant pain and swelling in her legs whenever she attempted to sit or stand for an appreciable period of time. The question seems to have been not whether or not she was disabled, but whether or not her present disability was the result of residual physical injury or to a neurosis. Thus Dr. McCracken, one of the doctors who examined the claimaint at the request of the Secretary, stated that the absence of positive clinical findings of residual damage suggested that her pain and her symptoms were "all on an anxiety basis."

Dr. Broaddus, who appeared as a witness for the Secretary, opened his testimony with the statement, "This is a very convincing case of disability. In other words, this woman has had six years of disability and misery * * *." After referring to the absence of positive clinical findings of residual damage, Dr. Broaddus referred to the claimant's apparent honesty, her attempt to return to work after her first acute attacks of phlebitis, and expressed the opinion that the fact that she had stayed on Dicumarol and wore the elastic stockings strongly indicate that these measures were essential in keeping her situation bearable. The explanation ventured by Dr. Broaddus was that there was either physical damage in the deeper veins or that the problem was

psychoneurotic. If it was the latter, he did not blame the claimant. He said that of such patients "who had a long period of rest in bed as part of the treatment of the phlebitis and they had been impressed with the possibility of personal, permanent, physical impairment or sudden death from pulmonary embolism (the claimant, of course, had suffered such an attack). These are the people who after their bout with thrombophlebitis are kept in bed for a long period of time, they are told by their doctors that they shouldn't do any work. They are told that they are not to go back and try to do lifting or straining and I find that very much of what I'm mentioning here is what she's been subjected to which would not mean that the problem, if she has this problem, is not of her manufacture. It's been shoved at her by doctors not trained in vascular surgery who have impressed on her over the last six years she has a potentially dangerous condition and she has to be awfully careful and she shouldn't do any lifting and she shouldn't go back to work and she may at anytime have further trouble and death from it. But that, I can't make that diagnosis, that's a possibility as is the possibility that she has a natural postphlebitis syndrome."

While, therefore, the record does not contain a satisfactory answer to the question of whether the claimant is suffering from a postphlebitis syndrome or from neuroses resulting from her treatment and the limitations and warnings of the attending physicians, either is incapacitating.[1] There is no doubt in the record of the reality of her pain or of the fact that it is endurable only if she keeps her legs elevated a substantial portion of the time without extended periods of standing or sitting. There is uncertainty in the record as to the immediate cause of the continuing disability, but no uncertainty as to the fact of disability.

---

1. Lambert v. Celebrezze, 4 Cir., 361 F.2d 677; Redden v. Celebrezze, 4 Cir., 361 F.2d 815; *See*, Mode v. Celebrezze, 4 Cir., 359 F.2d 135.

Since the Secretary's finding of no disability lacks support in the record, the judgment of the District Court will be reversed.

Reversed and remanded.