Richard R. ANDERSON, Plaintiff,

v.

Elliot L. RICHARDSON, Defendant.

Civ. A. No. 71–1320.

United States District Court,
E. D. Pennsylvania.

Dec. 15, 1972.

Eugene F. Zenobi, Reading, Pa., for plaintiff.

C. Oliver Burt, III, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

This action was brought to obtain disability benefits under the Social Security Act. The case comes before the court on motions for summary judgment filed by both the plaintiff and the Secretary of Health, Education, and Welfare.

The appropriate scope of review by the Court is set out in 42 U.S.C.A. § 405(g) as follows:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."

The plaintiff applied for disability insurance benefits on March 13, 1969. He last met the earnings requirement for coverage as of March 30, 1970. The Secretary determined that plaintiff had not met his burden of establishing ina-

bility to engage in substantial gainful activity during this time. It is this finding that is challenged by the present proceedings.

Richard R. Anderson is a 35-year old laborer who completed the 10th grade. He has had no specialized training. On January 4, 1965, he entered the Reading Hospital for treatment of a low back condition which had developed the year before as the result of an accident at work. Surgical fusion of the lumbosacral spine was performed on January 5, 1965, and Mr. Anderson left the hospital on January 27, 1965, in an improved condition.

In May, 1966, he was in an automobile accident after which he reported intermittent pain in the lumbar area. Flexion and bending forward to lift things caused the pain to increase. He returned to the Reading Hospital on October 7, 1967, for further investigation of his back condition. The area was surgically opened and the 1965 graft was found to be stable. However, a bursa was noticed in the lumbar area and this was removed. Claimant was discharged from the hospital on October 15, 1967.

After his spinal surgery, Mr. Anderson secured employment at the American Safety Table Company. During the next three and one-half years, he had various jobs including that of running a drill press and working on the assembly line. In the former, he had to stand and in the latter, he had to sit. He testified that he was not able to do either job since he had pain when he either stood or sat for too long a period of time. His most recent employment at American Safety Table was working on switchboxes, a job that he could do either standing or sitting. He said he lost this position when the work force was reduced and an employee with greater seniority claimed it. Plaintiff said that he was unable to perform this work without pain and that as a result of his back problems he lost a lot of time. He has not been employed since he left American Safety Table.

Records from American Safety Table show that from May, 1968, to January, 1969, Mr. Anderson was carried in a disability status. He received $1560. disability benefits for the six months ending November 29, 1968. Blue Cross and Blue Shield coverages were available to pay for a spinal operation, and although surgery was scheduled on three occasions, plaintiff failed to have it performed.[1] In addition, he was not under active medical treatment during this period. He was finally discharged on January 27, 1969, for refusing to return to work.

An X ray taken on June 24, 1968, revealed erosion of the bone graft in the low back. As a result, Dr. E. J. Morrissey, who had performed the fusion operation, concluded it was no longer solid and further surgery was recommended. Although appointments were made to have the surgery performed, in each instance, Mr. Anderson cancelled the operation. By letter dated August 5, 1968, Dr. Morrissey reported he was sure plaintiff could engage in light, restricted work. In March, 1969, Dr. Morrissey expressed the view that the fusion should be reinforced with new graft material. This opinion was based on an examination made by Dr. Morrissey on November 19, 1968, the last time that he saw plaintiff.

Dr. E. K. Houck, an orthopedic surgeon, examined Mr. Anderson on May 9,

1. Morse v. Gardner, 272 F.Supp. 618, 628 (E.D.La.1967), holds that it was not unreasonable for a claimant to refuse a spinal fusion and his doing so did not preclude disability benefits. See also Henninger v. Celebrezze, 349 F.2d 808 (6th Cir. 1965). In Simari v. Secretary of Health, Education, and Welfare, 297 F.Supp. 483 (D.Mass.1969) it was decided that reasonableness of a decision not to submit to surgery is a question of fact for the Secretary of Health, Education, and Welfare, not for a reviewing district court. See also Barnes v. Richardson, 320 F.Supp. 1267 (D.Ore.1970). The hearing examiner made no finding as to the reasonableness of Mr. Anderson's refusal to submit to surgery. Therefore, I assume it played no part in his decision and it does not in mine.

1969. Dr. Houck stated that back motion was limited about 50% in all directions. Despite X rays which indicated to the contrary, Dr. Houck believed the bone graft was not solid in view of plaintiff's continued complaints of pain, complaints which Dr. Houck accepted as genuine. Dr. Houck suggested the possibility of a back brace and physical therapy as a course of treatment.

Mr. Anderson was examined on April 29, 1970, by Dr. C. G. Cinelli, an orthopedic surgeon. X rays were taken. Dr. Cinelli concluded that plaintiff suffered from degenerative disc disease with a possible weakening of the spinal fusion. He felt that further surgery was warranted, preceded by a myelographic examination. Dr. Cinelli concluded that plaintiff was able to perform functions requiring short distances of walking, sitting and standing. However, he could not engage in activities requiring repetitive stooping, bending, lifting, climbing or kneeling.

At the hearing before the examiner, Dr. R. E. Chase, a vocational consultant, was asked to assume that plaintiff's abilities as of March 30, 1970, were those reported by Dr. Cinelli. On that basis, Dr. Chase stated that plaintiff would have been able to do the work of a nailing machine operator, a machine operator making cardboard boxes, a labeler, or a stamping machine operator. These jobs were available nationally and in the economic area where Mr. Anderson resides.

The burden of proof rests upon the claimant. He must show that he was entitled to benefits while still covered by the Social Security Act: Piper v. Richardson, 315 F.Supp. 234 (W. D.Pa.1970) and cases cited therein. Thus, Mr. Anderson must show he was totally disabled as of March 30, 1970, the last date on which he was qualified for disability coverage. Moreover, the determination of the Secretary of Health, Education, and Welfare must stand if there is substantial evidence to support it: 42 U.S.C. § 405(g); Ellis v. Finch, 333 F.Supp. 146, 147 (E.D.Pa. 1971).

In his evaluation of the record, the hearing examiner stated, "the medical evidence fails to show the claimant was physically unable to engage in any substantial gainful activity when he was still insured for disability insurance benefits." This finding was supported by the reports of Dr. Morrissey, Dr. Houck, and Dr. Cinelli. All concluded that while plaintiff had suffered an impairment, he was not totally disabled. Plaintiff presented no expert testimony to the contrary. The only evidence in his behalf were his complaints of pain. Of course, subjective complaints of pain are proper factors to be taken into account in determining disability: Nichols v. Finch, 421 F.2d 678 (4th Cir. 1970). However, such complaints may be evaluated by the finder of fact in light of the other evidence that may bear on the claimant's physical status.

Here, the circumstances under which Mr. Anderson left American Safety Table are indicative of both his ability to work and the job opportunities then available. His employment was not terminated because there was no work that he could perform or because he missed too much time. Rather, it was because after being carried on the disability list for six months, he did not return to work and did not show any good reason for his failure to do so.[2] The

---

2. On January 21, 1969, the factory superintendent at American Safety Table wrote to Mr. Anderson, saying in part:

"You made the statement that since your wife is working and you cannot find anyone to take care of your children, it would be a hardship for you to return to work. Your wife's employment is no excuse for your not returning to work.

"In my conversations with you and Dr. Morrissey, Jr., it is my belief that in order to become well, an operation is

possibility that there would be a job within his capabilities was made known to him, but he did not avail himself of the opportunity to obtain it.

The conclusion of the hearing examiner was also supported by the independent testimony of the vocational consultant that as of March 30, 1970, jobs existed in the national economy which Mr. Anderson could have performed.

In view of the fact that the findings of the hearing examiner are supported by substantial evidence before him, I must grant summary judgment for the defendant.

necessary . . . Since you are not going to have the operation, you should return to work. If you are unable to do your regular job after a trial period, you may bring in a doctor's statement requesting that you do lighter work. In this way you could bump into a lighter job. . . .

"We expect you to return to work Monday, 1/27/69, or come into the office and show good reason why you should not return to work as of that date . . . ."